UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES EDWARD WALLACE,<br><br>    Plaintiff,<br><br>  v.<br><br>ACOSTA, et al.,<br><br>    Defendants. | Case No. 1:21-cv-01275-DAD-EPG<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS CASE PROCEED ONLY ON PLAINTIFF'S EXCESSIVE-FORCE AND MEDICAL-NEEDS CLAIMS AGAINST DEFENDANT ACOSTA<br><br>(ECF No. 9)<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE DAYS |

Plaintiff James Edward Wallace is a pretrial detainee and proceeds *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. (ECF Nos. 1, 3, 9). This matter is before the Court for screening of Plaintiff's first amended complaint.

**I.    BACKGROUND**

Plaintiff filed his initial complaint on August 23, 2021, bringing excessive force, medical needs, and due process claims against the Lemoore Police Department and Lemoore Police Officer Acosta. (ECF No. 1). On September 28, 2021, the Court entered a screening order, concluding that Plaintiff stated an excessive-force claim against Defendant Acosta but that no other claims should proceed past the screening stage. (ECF No. 8). The screening order gave Plaintiff thirty days to either file a first amended complaint, notify the Court in writing

1

that he did not want to file an amended complaint and instead wanted to proceed only on his excessive-force claim against Defendant Acosta, or notify the Court in writing that he wanted to stand on his complaint. On October 25, 2021, Plaintiff filed a first amended complaint, which is now before the Court for screening.

For the reasons given below, the Court will recommend that this case proceed on Plaintiff's excessive-force and medical-needs claims against Defendant Acosta and that the claims against Defendant Lemoore Police Department be dismissed for failure to state a claim upon which relief may be granted. Plaintiff has twenty-one days from the date of service of these findings and recommendations to file his objections.

## II.     SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).

As Plaintiff is proceeding *in forma pauperis*, the Court also screens the complaint under 28 U.S.C. § 1915. (ECF No. 4). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.*

(quoting *Twombly*, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. *Id.* at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Iqbal*).

### III.  SUMMARY OF PLAINTIFF'S FIRST AMENDED COMPLAINT

In his first amended complaint, Plaintiff alleges as follows. On July 28, 2021, after Plaintiff "was already detained and in cuffs [and] apprehended by authorities," Acosta and other officers "pinned Plaintiff to the floor while another peace officer tazed [him]."[1] (ECF No. 9, p. 5). "This incident left Plaintiff in excruciating pain which caused his asthma to spike." (*Id.* at 5-6). "Plaintiff was also slammed and suffered injuries to his face bleeding and shoulder." (*Id.* at 6).

"All officer[s] at the scene ignored [Plaintiff's] injuries." (*Id.*). Plaintiff asked "Acosta to take [him] to the hospital" because he was "bleeding and . . . could not breath[e]." (*Id.*). Plaintiff's asthma spiked because of "[t]he shock from the tazer." (*Id.*). However, no officers did anything except place him in a police car and Acosta took him to the Lemoore Police Department, "ignoring [his] medical problems." (*Id.*).

Based on these allegations, the Court concludes that Plaintiff intends to bring claims of excessive force and denial of treatment for his medical needs.

### IV.  ANALYSIS OF PLAINTIFF'S COMPLAINT

#### A.  Section 1983

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes

---

[1] Minor alterations, such as omitting punctuation and correcting misspellings, have been made to quoted portions of Plaintiff's first amended complaint without indicating each specific change.

>to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. County of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark County Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 695 (1978).

### B. Excessive Force

Because the circumstances of the complaint indicate that Plaintiff was being arrested around the time of the use-of-force incident, the Fourth Amendment provides the relevant standard for Plaintiff's excessive-force claim. *Graham*, 490 U.S. at 394 ("Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person."); *see also Pierce v. Multnomah County, Oregon*, 76 F.3d 1032, 1042 (9th Cir. 1996) (noting that "the Fourth Amendment continues to protect an arrestee during the second custodial stage, post-arrest but pre-arraignment").

Such excessive-force claims are "properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Graham*, 490 U.S. at 388. "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (internal quotation marks and internal citations omitted). The Supreme Court has cautioned that this reasonableness inquiry should not be approached mechanically but "its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* As for the objective component of the inquiry, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397.

In his complaint, Plaintiff alleges that Officer Acosta and other officers pinned him to the floor "while another peace officer tazed [him]."[2] (ECF No. 9, p. 5). Plaintiff alleges he "was also slammed and suffered injuries," to his shoulder and his face, including bleeding. (*Id.* at 6).

---

[2] Although Plaintiff mentions other officers in his complaint, Acosta is the only officer that Plaintiff named as a Defendant and Plaintiff has not asserted any claims against any other officers.

Such allegations sufficiently state, for purposes of screening, an excessive-force claim against Officer Acosta.

However, Plaintiff fails to state an excessive force claim against the only other Defendant named in the complaint, the Lemoore Police Department. A county or other local governmental entity may be liable for a constitutional deprivation where the plaintiff can "satisfy the requirements for municipality liability established by *Monell* and its progeny." *Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1247 (9th Cir. 2016). Under *Monell*, an entity defendant cannot be held liable for a constitutional violation solely because it employs a tortfeasor. 436 U.S. at 691. An entity defendant can only be held liable for injuries caused by the execution of its policy or custom or by those whose edicts or acts may fairly be said to represent official policy. *Id.* at 694. "In addition, a local governmental entity may be liable if it has a 'policy of inaction and such inaction amounts to a failure to protect constitutional rights.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001) (quoting *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992)). "Since *Iqbal*, courts have repeatedly rejected conclusory *Monell* allegations that lack factual content from which one could plausibly infer *Monell* liability." *See, e.g., Rodriguez v. City of Modesto*, 535 Fed. App'x 643, 646 (9th Cir. 2013) (affirming district court's dismissal of *Monell* claim based only on conclusory allegations and lacking factual support).

Here, Plaintiff fails to state a cognizable claim against Defendant Lemoore Police Department because Plaintiff does not allege that Defendant Lemoore Police Department had any policy or custom that led to a deprivation of his constitutional rights. *See Taylor v. W. Sacramento Police Dep't*, No. CIV S-11-0502 EFB P, 2011 WL 2144486, at *2 (E.D. Cal. May 31, 2011) (dismissing claim against a police department where "Plaintiff ha[d] not alleged that he was unconstitutionally arrested pursuant to an official policy or custom").

### C. Medical Needs

The Ninth Circuit concluded in *Tatum v. City and County of San Francisco* that the Fourth Amendment requires an arrestee to receive objectively reasonable care. *See Tatum*, 441

F.3d 1090, 1098 (9th Cir. 2006) ("Just as the Fourth Amendment does not require a police officer to use the least intrusive method of arrest, neither does it require an officer to provide what hindsight reveals to be the most effective medical care for an arrested suspect.") (internal citation omitted). While the Ninth Circuit has not defined exactly what constitutes objectively reasonable medical care, it has concluded that "police officers [must] seek the necessary medical attention for a detainee when he or she has been injured while being apprehended by either promptly summoning the necessary medical help or by taking the injured detainee to a hospital." *Id.* at 1099 (quoting *Maddox v. City of Los Angeles*, 792 F.2d 1408, 1415 (9th Cir.1986)). A district court has summarized as follows what is, at a minimum, required under *Tatum*:

> The critical holding of that case, therefore, is that when an arresting officer realizes that an arrestee requires medical attention, he is not required "to provide what hindsight reveals to be the most effective medical care," but he is required to promptly summon some sort of appropriate care. Failure to do anything is a violation of the arrestee's Fourth Amendment rights—evidence "that the officers ignored [an arrestee's] deteriorating medical condition" is reason to deny qualified immunity.

*B.P. v. Cty. of San Bernardino*, No. EDCV 19-1243-JGB-SPX, 2019 WL 7865177, at *3 (C.D. Cal. Nov. 14, 2019) (alteration in original and internal citations to *Tatum* omitted).

Here, Plaintiff states that all officers at the scene "ignored [his] injuries." (ECF No. 9, p. 6). Specifically, he asked "Acosta to take him to hospital [as he] was bleeding and . . . could not breath." (*Id.*). Plaintiff's asthma spiked because of the "shock from the tazer." (*Id.*). However, Acosta ignored Plaintiff's medical problems and took Plaintiff to the Lemoore Police Department. (*Id.*). Such allegations sufficiently state, for purposes of screening, a medical-needs claim against Officer Acosta.

However, like his first claim, Plaintiff fails to state a cognizable claim against Defendant Lemoore Police Department because Plaintiff does not allege that Defendant Lemoore Police Department had any policy or custom that led to a deprivation of his constitutional rights. *See Taylor*, 2011 WL 2144486, at *2.

///

**V.     CONCLUSION AND RECOOMENDATIONS**

The Court has screened Plaintiff's first amended complaint and finds that the following claims should proceed past screening: Plaintiff's excessive-force and medical-needs claims against Defendant Acosta.  However, the claims against Defendant Lemoore Police Department should be dismissed for failure to state a claim upon which relief may be granted.

The Court previously explained to Plaintiff the deficiencies in his initial complaint, provided Plaintiff with relevant legal standards, and provided Plaintiff an opportunity to amend his complaint. As Plaintiff filed his first amended complaint with the benefit of the information provided by the Court, it appears that further leave to amend would be futile.

Accordingly, based on the foregoing, it is HEREBY RECOMMENDED that:

1. This case proceed on Plaintiff's excessive-force and medical-needs claims against Defendant Acosta;
2. All claims against Defendant Lemoore Police Department be dismissed for failure to state a claim upon which relief may be granted; and
3. The Clerk of Court be directed to terminate Defendant Lemoore Police Department be from the docket;

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within twenty-one (21) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **November 12, 2021**                      /s/ *Erica P. Grosjean*
                                                                          UNITED STATES MAGISTRATE JUDGE